IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

FILED BY ⟨sig⟩ D.C.

05 SEP -1  PM 5: 44

THOMAS M. GOULD
CLERK, U.S. DISTRICT COURT
W/D OF TN, MEMPHIS

GARDEN CITY BOXING CLUB,
INC., As Broadcast Licensee of the
June 8, 2002 LEWIS/TYSON Program,

    Plaintiff,

v.    No. 03-2451 B

P & C CAFÉ, INC. d/b/a P & C CAFÉ
a/k/a AFTER DARK BAR & GRILL,

    Defendant.

---

## ORDER ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

---

Plaintiff, Garden City Boxing Club, Inc., brought this action against Defendant for the unauthorized broadcast of a closed circuit boxing match in violation of 47 U.S.C. § 605(a). Defendant failed to answer Plaintiff's complaint or otherwise defend this action. On June 2, 2005, Plaintiff filed a motion for final default judgment which was referred to United States Magistrate Judge S. Thomas Anderson for report and recommendation regarding damages and other fees sought by the Plaintiff prior to the entry of default judgment.

Magistrate Judge Anderson issued a report on July 11, 2005 recommending that Plaintiff be awarded damages in the amount of $6,722.50. Plaintiff subsequently filed objections to the magistrate judge's report and recommendation solely as to the calculation of damages. Specifically, Plaintiff argues that the statutory $10,000 maximum plus enhanced damages in the amount of $50,000 be awarded because of Defendant's failure to appear in the instant action and willful violation of 47 U.S.C. § 605(a) as evidenced by charging patrons a cover charge to view the

This document entered on the docket sheet in compliance
with Rule 58 and/or 79(a) FRCP on  9-2-05



unauthorized exhibition of the program. Based on a <u>de novo</u> review of the record, the Court, for the reasons set forth below, overrules Plaintiff's objections and ADOPTS the magistrate judge's report and recommendation.

## BACKGROUND

Plaintiff held the rights for commercial distribution via closed circuit television of the June 8, 2002 boxing match between Lennox Lewis and Mike Tyson including all undercard bouts. (Compl. at 3; Closed-Circuit License Agreement at 1.) Pursuant to the contract granting those rights, Plaintiff entered into agreements with commercial establishments in the State of Tennessee granting authorization to publicly exhibit the program in exchange for payment of a licensing fee. (Lonstein Aff. at 1.) Defendant did not enter into any such agreement with Plaintiff nor pay a licensing fee. While the exact method is unknown, Plaintiff alleges that Defendant utilized an illegal satellite receiver, cable converter box or other device to intercept and exhibit the program on June 8, 2002 without authorization for the purposes of commercial advantage or private financial gain. (<u>Id.</u> at 3, 4.)

In an effort to protect his interests, Plaintiff hired Signal Piracy Investigations ("SPI") to contract with independent auditors to identify establishments intercepting and broadcasting the program without authorization. (Gagliardi Aff. at 2.) Mr. Craig Pifer, an independent auditor hired by SPI, visited the After Dark Café on the night of the broadcast. (Pifer Aff. at 1.) At approximately 8:20 p.m. on June 8, 2005, Mr. Pifer paid a $10.00 cover charge and entered the After Dark Café. (<u>Id.</u>) Although the Defendant was not authorized to broadcast the boxing program, Mr. Pifer observed six television sets showing the undercard bout between Joel Casamayor and Juan Jose Arias scheduled to appear before the Lewis-Tyson match. (<u>Id.</u>) Pifer noted that there were

2

approximately 6-15 patrons in the establishment during his twenty-minute visit and that the capacity was about 100 persons. (Id. at 1-2.)

## ANALYSIS

Section 605 of the Communication Act of 1934 provides, that "[n]o person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person." 47 U.S.C. § 605(a). Television communications, except those whose broadcast is intended for the use of the general public, are within the scope of Section 605's protection. Cox Cable Cleveland Area, Inc. v. King, 582 F. Supp. 376, 379-80 (N.D. Ohio 1983). Because the Defendant has not responded to this action, Magistrate Judge Anderson correctly accepted the Plaintiff's allegations as true and found that Defendant violated 47 U.S.C. § 605(a).

A party aggrieved under Section 605(a) may elect to recover either "actual damages" and profits by the violator or statutory damages of "not less than $1,000 or more than $10,000, as the court considers just . . ." 47 U.S.C. 605(e)(3)(C)(i)(I), (II). Upon a finding that the statute was violated "willfully and for purposes of direct or indirect commercial advantage or private financial gain," the Court may award up to an additional $100,000 for each violation. 47 U.S.C. 605(e)(3)(C)(ii). Rather than providing guidelines, Section 605 relies on the Court's discretion in determining the amount of damages within the specified range. See Garden City Boxing Club, Inc. v. Giambra, No. 02-839S, 2004 WL 1698633, at *3 (W.D.N.Y. July 27, 2004); see also Kingvision Pay-Per-View, Ltd. v. Recio, No. 02-6583, 2003 U.S. Dist. LEXIS 10440, at *12 (S.D.N.Y. June 11, 2003) (noting that courts have "wide discretion in determining the amount of statutory damages to award."). In addition to statutory damages and those for willful violations, 47 U.S.C. § 605(e)(3)

requires the Court to award "full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails. 47 U.S.C. § 605(e)(3)(B)(iii).

After reviewing the record, Magistrate Judge Anderson determined that the Plaintiff should be awarded statutory damages in the amount of $1,500.00, additional damages in the amount of $3,500.00 pursuant to 47 U.S.C. § 605(e)(3)(C)(ii) to account for Defendant's willful conduct, and reasonable fees and expenses associated with the action in the amount of $1,722.50. In his objections, Plaintiff asks the Court to reconsider the magistrate judge's calculation of both the statutory damages and those awarded under 47 U.S.C. § 605(e)(3)(C)(ii).

Courts have developed two approaches for determining statutory damages under Section 605. Under the first approach, adopted by Magistrate Judge Anderson in the instant case, the award of damages is calculated by a set sum multiplied by the number of patrons in the establishment at the time of the violation. Conversely, other courts have awarded a flat sum for damages. Recio, 2003 U.S. Dist. LEXIS 10440, at *12. After reciting relevant case law, Magistrate Judge Anderson calculated statutory damages based on the number of patrons viewing the unauthorized broadcast, assessing a $100.00 statutory penalty for each of the 15 persons estimated to be present when Pifer visited the After Dark Café, for a total statutory damage award of $1,500.00. (Report and Recommendation at 4.) Plaintiff argues that calculation of damages based on the number of patrons present at the time the auditor was present is not a fair estimate of the total number of patrons who visited the establishment to view the boxing match. Instead, Plaintiff asserts that the Court should assess the statutory penalty on the basis of the capacity of the establishment, or 100 persons. Using this alternative method, Plaintiff would be awarded the statutory maximum of $10,000.00. Plaintiff asserts no case law in support of the use of the capacity of the establishment as the basis for

4

calculating damages under 47 U.S.C. § 605(e)(3)(C)(i)(II). Rather, Plaintiff relies on two district court decisions awarding a flat sum amounting to the statutory maximum where defendants failed to appear and defend the case. See DirecTV v. Ward, No. C2-04-873, 2005 U.S. Dist. LEXIS 9868 (S.D. Ohio March 16, 2005); Cablevision Sys. N.Y. City Corp. v. Faschitti, No. 94-6830, 1996 U.S. Dist. LEXIS 1212 (S.D.N.Y. February 6, 1996).

The Court finds that the number of patrons present in the establishment during the illegal broadcast is a reasonable basis for the calculation of statutory damages. See e.g. Kingvision Pay-Per-View Corp. v. Prime Time Saloon, Inc., No. 95 CIV 1422 (E.D.N.Y. September 30, 1996) (awarding $ 50 per patron, plus $ 10 per patron to reflect a $ 10 cover charge); Midland Enters, Inc., 858 F. Supp. 42, 45 (S.D.N.Y. 1994) (awarding $ 50 per patron); Time Warner Cable of New York City v. Googies Luncheonette, Inc., 77 F. Supp. 2d 485, 490 (S.D.N.Y. 1999) (awarding $50 per patron). As noted by U.S. Magistrate Judge Grubin in Time Warner Cable v. Googies Luncheonette, Inc., damage awards calculated in this manner are based on a "theory of rough justice, that the patrons viewing the event without access to the unauthorized showing would have ordered it themselves." 77 F. Supp. 2d 485, 490 (S.D.N.Y. 1999). By imposing a penalty on the Defendant for each unauthorized viewing, Plaintiff is compensated for any loss it suffered. The per patron penalty should reflect not only the lost profits to Plaintiff, but also any profits made by Defendant from the illegal broadcast to ensure that they "reap no benefit from unlawful action." Id. While the Plaintiff did not provide evidence of what licensing fee it charged commercial establishments, nor what fee individual residential viewers were charged for authorization to view the program, the $100.00 per patron penalty imposed by Magistrate Judge Anderson is likely in excess of the probable licensing fee and profits the Defendant made from the cover charge and purchases on a per-customer basis.

5

Further, the award of statutory damages near the low end of the range permitted by Section 605 is appropriate where the unauthorized broadcast was made available to a rather small number of persons, "not much larger than might be expected in a private home." Kingvision Pay-Per-View Ltd. v. Hansen, No. 02-6587, 2004 U.S. Dist. LEXIS 6262, at *10 (S.D.N.Y. April 5, 2004) (awarding $2,500 in statutory damages where 6-10 patrons viewed the unauthorized broadcast). Such an award recognizes that "maximum statutory damages should be reserved for cases where there is evidence of more substantial injury to the plaintiff or profit by the defendants." Kingvision Pay-Per-View, Ltd. v. Jasper Grocery, 152 F. Supp. 2d 438, 442 (S.D.N.Y. 2001).

Plaintiff also objects to the magistrate judge's calculation of additional damages under 47 U.S.C. § 605(e)(3)(C)(ii). Finding that the Defendant's actions in intercepting and broadcasting the boxing program were willful, Magistrate Judge Anderson exercised discretion under 47 U.S.C. § 605(e)(3)(C)(ii) to impose an additional penalty of $3,500.00 against Defendant. Plaintiff urges the Court to apply a multiplier of five to the statutory damage award to determine the amount of additional or enhanced damages imposed for willful violations. (Objections at 2.)

As Plaintiff noted in his Objections, courts utilize a variety of factors in determining whether a defendant's conduct is subject to enhanced damages for willfulness and in establishing what amount of damages to impose within the range provided by Section 605. Such factors include (1) repeated violations over an extended period of time; (2) substantial unlawful monetary gains; (3) significant actual damages to plaintiff; (4) advertising for the intended broadcast of the event; and (5) charging a cover charge or charging premiums for food and drinks. Kingvision Pay-Per-View Ltd. v. Rodriguez, No. 02-7972, 2003 U.S. Dist. LEXIS 2674, at *2 (S.D.N.Y. Feb. 25, 2003). There is no doubt that the Defendant's conduct in illegally intercepting the program was willful, nor that

the showing of the program on six televisions in the establishment was motivated by a desire to profit. However, in the instant case, there are no allegations of repeated or prolonged piracy violations, advertisement or promotion of the intended broadcast, or significant actual damages to the Plaintiff. While the Defendant did collect a $10.00 cover charge from patrons during the illegal broadcast, there is no evidence that the Defendant profited substantially from the showing of the event, or that they derive a significant portion of their revenue by showing pirated satellite broadcasts. Entertainment by J&J, Inc. v. Mama Zee Restaurant and Catering Services, Inc., No. 01-3945, 2002 U.S. Dist. LEXIS 13686, at *12 (E.D.N.Y. June 20, 2002). Accordingly, the Court finds the award of $3,500.00 in additional damages by the magistrate judge to be reasonable under the circumstances.

As the Plaintiff has not objected to the recommendations of the magistrate judge that the Plaintiff be awarded $1,722.50 for reasonable fees and expenses associated with this action nor the denial of prejudgment interest, these recommendations are ADOPTED.

## CONCLUSION

Based on a de novo review of the record before it, the Court hereby ADOPTS in the entirety the decision of the magistrate judge. Accordingly, Plaintiff's objections are OVERRULED and Plaintiff is awarded damages and other costs in the amount of $6,722.50.

IT IS SO ORDERED this 1st day of September, 2005.

J. DANIEL BREEN
UNITED STATES DISTRICT JUDGE

UNITED STATES DISTRICT COURT - WESTERN DISTRICT OF TENNESSEE



# Notice of Distribution

This notice confirms a copy of the document docketed as number 30 in case 2:03-CV-02451 was distributed by fax, mail, or direct printing on September 2, 2005 to the parties listed.

---

Wayne D. Lonstein
LONSTEIN LAW OFFICE PC
1 Terrace Hill
P.O. Box 351
Ellenville, NY 12428

Honorable J. Breen
US DISTRICT COURT